JONES COPELAND v. JAMES COLLINS, Administrator of Thomas Collins.

(Decided May 26, 1898.)

*Action on Note—Evidence—Statutes of Another State—*
*Interest—Usury—Statute of Limitations—Payment*
*on Note—Administrator.*

1. Whether a contract is usurious is a question to be determined by the laws of the State where the contract was made.

2. A printed copy of a statute of another State contained in a book purporting to have been published by the authority thereof is admissible to prove the existence of such statute. (Section 1338 of *The Code.*)

3. A partial payment by the maker of a note keeps the note in force against a surety for three years after such payment.

4. When the statute of limitations begins to run against a right of action it is not arrested by a change in the condition of the parties, such as the death of the debtor and lack of administration on his estate.

5. A payment on a note does not "stop" the running of the statute of limitations, but is only a renewal of the obligation and fixes a new date from which to make a computation of time; and, hence, where a surety to a note was deceased at the time of a partial payment by the principal and no administrator had been appointed, the statute of limitations ran from the time of such payment and not from the qualification of the administrator.

FAIRCLOTH, C. J., and CLARK, J., dissent.

CIVIL ACTION, heard before *Hoke*, *J.*, and a jury at Fall Term, 1897, of POLK Superior Court, on appeal from a judgment of a Justice of the Peace. The facts appear in the opinion. There was a verdict for the plaintiff and from the judgment thereon the defendant appealed.

*Mr. S. Gallert*, for defendant (appellant).
No counsel *contra*.

FURCHES, J.: This is an action on a promissory note, executed in South Carolina, bearing ten per cent. interest, payable to the plaintiff and signed by W. E. Collins, as principal, and Thomas Collins as surety, dated March 4, 1886, and due 9 months after date.

There had been several payments made on said note, the first within less than three years from the maturity of said note, and the others within less than three years of each other, the last payment being made by W. E. Collins on the 28th of October, 1892. Thomas, the surety, died intestate June 2nd, 1892, and there was no administration on his estate until November the 30th, 1894, and this action was commenced July 26, 1897.

The statutes of limitations and of usury are pleaded and relied on as defences to this action.

It being admitted that this is a South Carolina contract, the question of interest is governed by the statute law of that State.

The plaintiff produced on the trial a bound volume—purporting to be the published law of South Carolina in 1883, in which it appeared that ten per cent. interest was allowed in that State. This book was objected to by the defendant, objection overruled and exception. There was no error in this ruling. *Hilliard* v. *Outlaw*, 92 N. C., 266; *McDugald* v. *Smith*, 33, N. C., 576; *The Code*, Section 1338.

As to the plea of the Statute of Limitations, there is more trouble than there was as to the plea of usury. Our Statute of Limitations—especially as applied to dead men's estates in the hands of personal representatives—is a subject fruitful of much trouble, and it would be difficult to reconcile our opinions upon this subject. We will not attempt to do so in this opinion. But it seems to us that there are a few well established principles, that are not affected by what appear to be conflicts in reported cases, that should govern our judgment in the case at bar.

The note sued on became due on the 9th day of December, 1886, and plaintiff's right of action accrued at that time. Defendant's intestate was then alive and continued to live until the 2nd of June, 1892. The statute then commenced to run on the 9th day of December, 1896, and plaintiff's right of action would have been barred before intestate's death but for the repeated payments made on the note. These payments kept it alive—whether paid by defendant's intestate or his co-obligor, who was the principal in the note. *Green* v. *Greensboro College*, 83, N. C., 449; *Moore* v. *Goodwin*, 109 N. C., 218. And it is contended for the plaintiff that this payment—October 28, 1892—made after the death of defendant's intestate, stopped the statute, and as there was no one to sue until November 30, 1894,

when defendant qualified as administrator of the intestate obligor, and this action having been commenced on the 26th of July, 1897, was within less than three years from the date of the defendant's qualification, and in time. We do not agree with the plaintiff in this contention.

It seems to be conceded that plaintiff's right of action would be barred but for this last payment, and his right of action seems to hinge upon the effect of this last payment. Does it stop the statute and create a new *causa litis*, or is it a mark *in viam* by which time is counted?

It has been held without any break in the line of decisions, from the time of our earliest reported cases, that, when the statute of limitations commences to run, no changed conditions in the parties will affect its running—that when it commences to run it continues to run. The earlier cases in our own reports announcing this doctrine will be found in the 3rd N. C., page 150 (5, *Cobham* v. *Neil*, Anonymous, 2 N. C., 416, *Pearce* v. *House*, 4 N. C., 722 (305). And there will not be found a discordant sound upon this point, from those decisions until this time. If the plaintiff's contention is true, these opinions are erroneous and should be so pronounced.

But this very point has been before this Court several times and has been thoroughly considered, and, as we think, settled.

In *Jones* v. *Brodie*, 7 N. C., 594, the very point was presented and decided by the court, Taylor, C. J., delivering the opinion of the court. This opinion distinctly holds that where there is a party capable of suing after the right of action accrues, the statute commences and never stops, for any changed condition in the parties. In that case the defendant's intestate died about a year

after the plaintiff's cause of action accrued, and there was no administration for seven years. Defendant plead the statute of limitations. The plaintiff there, as the plaintiff here, contended that the statute did not run during the seven years when there was no administrator—no one to sue. But the court held that as the statute started to run in the life time of defendant's intestate, it continued to run and plaintiff's action was barred. This case was affirmed in *Goodloe* v. *Taylor*, 14 N. C., 178, and in *Armistead* v. *Bozman*, 36 N. C., 117—the opinion in this case being delivered by Daniel, J. The question seems to have been settled by these opinions and has rested from that time until now.

The cases of *McKinder* v. *Littlejohn*, 23, N. C., 66, *Buie* v. *Buie*, 24 N. C., 87 and *Long* v. *Clegg*, have been called to our attention. But they are not in point, they do not refer to or pretend to overrule any of the cases we have cited. There was no need that they should do so. They are not decided upon the statute of limitations, but upon the statute of presumptions which is not the statute of limitations.

The statute under which these decisions were made only presumes a payment. This presumption may commence at any time after the cause of action accrues, and may be rebutted by showing that the defendant was and had been all the time insolvent, or that he had been absent from the country, or that there had been no one to pay—no administrator. These are all evidentiary facts offered to the *jury* for the purpose of proving that the debt had not in fact been paid. This evidence is for the *jury* and not for the court.

So we can see why such evidence, under the statute of presumptions, is competent to the jury, to disprove payment in fact; and that these and like cases are not

in conflict with *Jones* v. *Brodie, supra,* and that line of cases.

The statute of limitations was suspended from the 20th of May, 1861, till January, 1870, but this was done by the Legislature, the same power that created the statute, and, of course, had the power to suspend it. So this suspension has nothing to do with the question we are now considering.

Our opinion, then, is that a payment does not *stop* the running of the statute of limitations.     It is only a renewal of the original obligation—a mark in the race of time, and the running of the statute, behind which the defendant cannot go in the computation of time.     The acts of the parties have so fixed it, and they must be governed by it.     But it does not *stop the running of the statute,* it runs on, and this is in harmony with all our cases that say when the statute commences to run it continues to run, and no changed condition of the parties can arrest it.

It having been more than three years from the date of the last payment to the commencement of this action, the plaintiff's cause of action was barred, and he cannot recover.     There is error.

Error.

FAIRCLOTH, C. J., dissenting : This action is on a note payable to plaintiff and signed by W. E. Collins, principal, and Thomas Collins, surety, dated March 4, 1886, payable 9 months after date. The note bears 10 per cent. interest, and it was a South Carolina contract. Thomas Collins died intestate June 2, 1892, and defendant qualified as his administrator November 30, 1894.     There were several credits on the note, the last one paid by the principal on October 28, 1892, a few months after the

death of the surety, Thomas Collins. This action was commenced on July 26, 1897.

In order to prove that the legal rate of interest in South Carolina was 10 per cent. at the date of the note, his Honor allowed the plaintiff to put in evidence "a bound printed statute law, purporting to be statutes published by authority, as the public statute law of the State of South Carolina, of date for 1883." Defendant excepted.

Our *Code,* Section 1338, provides that "a printed copy of a statute or other written law of another State . . . contained in a book or publication purporting or proved to have been published by the authority thereof, shall be evidence of the statute law, etc." *Hilliard* v. *Outlaw,* 92 N. C., 266; *McDugald* v. *Smith,* 33 N. C., 576, and *The Code* just cited support the ruling of his Honor. Exception not sustained.

The defendant relied upon the statute of limitations, and insisted that the death of the surety severed his joint obligation and devolved the liability on his principal. He cited good authorities in other States to support his proposition as to *joint* obligations, but furnished none to support it when the obligation is *joint* and *several,* as it is under our statute. When a partial payment on a note is made either by the principal or any of the sureties before it is barred, the payment continues in force as to all the obligors. *Green* v. *Greensboro College,* 83 N. C., 449; *Moore* v. *Goodwin,* 109 N. C., 218.

The payment before the bar stops the course of the statute as to all, and becomes a new starting point, from which the statute runs as if that was the day of maturity of the debt. And so at each payment. *Green* v.

122—40

*Greensboro College, supra.* These results follow from the fact that all are obligors, and because it is their common liability and they have a community of interest. They constitute a *class*, and the act of one, as a payment, becomes the legal act of the whole class. This effect does not reach any other *class* connected with the same transaction, as drawers, acceptors or joint endorsers, except those in the same class. *Wood* v. *Barber*, 90 N. C., 76, and cases cited. On the death of the surety, his liability fell upon his representatives. The administrator qualified November 30, 1894, and the last payment was made October 28, 1892. After some debate, it was settled that the time between the death and the issuance of letters of administration should not be counted against the creditor, for, in the language of Gaston, J., in *Buie* v. *Buie*, 24 N. C., 87, "It cannot be doubted, we think, that the want of a person against whom to bring suit rebuts the presumption of payment arising from forbearance to sue." The reason is equally applicable to the statute of limitations, when there is no one to sue. *Lee* v. *Gause*, 24 N. C., 440; *Jolliffe* v. *Pitt*, 2 Vern., 694. This doctrine was reconsidered and sustained in *Long* v. *Clegg*, 94 N. C., 763.

Our effort to reconcile the decisions on this question has not been successful. It has been generally stated that when the statute begins to run nothing can stop it, unless the statute contains some limitations. In some cases a literal interpretation worked gross injustice, and the court was induced to find some reasonable exception in such cases when it could do so. Soon after the Act of 1715, our predecessors were perplexed with the same difficulty that we have. The difficulty arises from facts like these: When the creditor dies before the right of action accrues, or before the claim is barred, and no

representative is appointed until after the bar intervenes; when the debtor dies before the action is barred, and no personal representative is appointed until after that time; when payments are made by either before or after the death of the debtor, principal or surety, and there is no one in being to sue or be sued, with a statute fixing a different period of limitation as to a principal or surety, and the statutes for settling the estates of deceased persons, and other conditions presented in the course of affairs, and the provisions of *The Code,* 164. Out of these and other conditions we might expect some contradictions in the decisions, but we think the principle, on which we can put this case, is well settled. This Court, at an early date, after holding that, until there is some person to make claim, such as can be prosecuted, there is no cause of action, and the bar does not begin to run, said : "The moment it is established that this act is in the nature of an act of limitations, the bar of which does not begin to run until there is a cause of action, that moment it follows that the want of a representative of the debtor, as well as of a representative of the creditor, takes the case out of the bar of the statute. Cause of action is the right to prosecute an action with effect; and, legally, a cause of action does not exist until there be a person in existence capable of suing, and also a person against whom the action may be brought." *McKinder* v. *Littlejohn,* 1 Ired. 66, citing several English cases. This reasonable rule has not been overruled, but was reconsidered and sustained in *Buie* v. *Buie,* 2 Ired., 87, and in *Long* v. *Clegg,* 94 N. C., 766. We do not now feel at liberty to upset a rule so long established, if we had any doubt about its correctness. As the plaintiff had no opportunity to present his claim against the surety after his death until the administra-

tor was appointed, and as the summons was issued within three years after that time, the plea in bar does not defeat the action.

Affirmed.

CLARK, J.: I concur in the dissenting opinion.